

**FILED**

**February 3, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:00 AM



## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| Jason Oswald, | ) Docket No.: 2015-07-0162 |
| Employee, | ) |
| v. | ) State File Number: 36474-2015 |
| LMI Tennessee, Inc., | ) |
| Employer, | ) Judge Allen Phillips |
| And, | ) |
| | ) |
| Auto Owners Ins. Co. | ) |
| Carrier. | ) |
| | ) |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on January 6, 2016, upon the Request for Expedited Hearing filed by the employee, Jason Oswald, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Mr. Oswald seeks medical benefits for an alleged back injury. The employer, LMI Tennessee, Inc., denies the compensability of Mr. Oswald's injury. The central legal issue is whether Mr. Oswald's injury is causally related to his employment at LMI. For the reasons set forth below, the Court finds Mr. Oswald has not come forward with sufficient evidence at this time to show his injury is primarily related to his employment. Accordingly, he is not entitled to the requested benefits.[1]

### History of Claim

Mr. Oswald is a thirty-eight-year-old resident of Benton County, Tennessee who worked for LMI as a heavy equipment mechanic. He alleges an injury on April 20, 2015, when attempting to install a drive-line on a machine owned by Smith Logging, one of LMI's customers.

Mr. Oswald testified he travelled to Smith Logging to perform repairs on a "knuckle-boom," a large crane used to move logs. In addition to the drive-line

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

installation, Mr. Kevin Smith, owner of Smith Logging, asked Mr. Oswald to perform other repairs on the boom including inspecting non-functioning lights on the boom, checking certain "lines" and performing any needed work on a pressure release valve. After this conversation, Mr. Oswald stated Mr. Smith returned to "the shop" to work on a trailer, leaving Mr. Oswald alone.

While working alone, Mr. Oswald claims to have lifted the drive-line, described by him as being four to five feet long, having a diameter of six to eight inches and weighing sixty to eighty pounds. When attempting to lift the part, he "couldn't get it up there" [referring to the underside of the machine] and, with the part on his back and while "up on one knee," he slipped and fell "back and to the side." Mr. Oswald then sought out Mr. Smith to ask if he would install the part, and Mr. Smith did so.

Mr. Oswald testified he told Mr. Smith that, "I . . . hurt my back whenever I tried to put the drive-line in." He recalled the incident occurring at approximately 3:00 to 3:30 PM and that he then returned to LMI, an approximate forty-minute drive.

Mr. Smith testified on behalf of LMI. He stated Mr. Oswald had been at Smith Logging on different occasions to perform equipment repairs. During those previous visits, Mr. Oswald never asked for assistance when performing maintenance work on Smith's equipment. He recalled Mr. Oswald coming to his business on April 20, 2015, for the above-stated maintenance. Mr. Smith confirmed Mr. Oswald asked for assistance in installing the drive-line and that he, Mr. Smith, installed the part in approximately ten minutes. He stated the drive-line weighed forty to fifty pounds and that one person can perform the installation by holding up the part with one hand and attaching "the bolts" with the other. He personally did not see Mr. Oswald lift the drive-line but admitted on cross examination that Mr. Oswald "could have" done so "before I was there." Mr. Smith observed Mr. Oswald continue to work on the knuckle-boom; specifically, he saw him climb on the machine and check its lights. Mr. Oswald neither stated that he had injured his back nor complained of pain during the approximate one-and-one-half hours he remained at Smith Logging after Mr. Smith installed the drive-line. Mr. Smith recalled Mr. Oswald leaving, "before dinner" and that he was not walking in "an unusual way."

Mr. Oswald testified that, upon returning to LMI, he was, "kinda leaned over sideways." He stated Mr. Tim Fowlkes, his supervisor and LMI's manager, asked, "what's wrong with you," to which Mr. Oswald replied that he had hurt his back when trying to install the drive-line. Mr. Fowlkes advised him to "go home and rest." Mr. Oswald testified he was unable to walk the next morning and that he called Mr. Fowlkes to advise he would attempt to report to work after using an "inversion table" to alleviate his pain. Mr. Oswald stated Mr. Fowlkes said to "bring him a doctor's excuse."

For his part, Mr. Fowlkes testified he had been employed by LMI for thirty years. He confirmed Mr. Oswald's position as a mechanic and employment by LMI since

2

August 2013. Over the course of Mr. Oswald's employment, Mr. Fowlkes had observed him acting as if he were in pain. He testified Mr. Oswald frequently missed work and estimated he had missed twenty days in 2015 prior to April 20. He recalled "for sure" that Mr. Oswald had missed several days in December 2014 and January 2015. In February 2015, because of missed days, Mr. Fowlkes advised Mr. Oswald if he missed any more work without calling, or producing a doctor's excuse, he would terminate him.

Mr. Fowlkes testified that Mr. Oswald did not tell him of any injury on April 20, 2015. To the contrary, Mr. Oswald called the next day, April 21, 2015, and complained of back pain. He advised Mr. Fowlkes he would attempt to come to work after using an inversion table. He did not appear for work on April 21 but called the following day to advise that he was going to a doctor. Mr. Fowlkes testified that at no time did Mr. Oswald advise him that he had hurt his back on the job.

Mr. Oswald testified he first sought medical attention on April 21, 2015, at Camden General Hospital. (Ex. 5 at 4.) He reported a "chronic" onset of pain but, he was working two days ago and felt a "twinge." He described the event as a "flare up of his chronic back pain" and reported five prior back surgeries. *Id.* The provider diagnosed chronic low back pain and failed back syndrome and advised him to follow-up with his primary physician. *Id.* at 23-24.

On April 28, 2015, Mr. Oswald saw Dr. Alex Heffington. Dr. Heffington took a history of an injury on April 20, 2015, while "putting [a] drive shaft in [a] 'knuckle boom.'" (Ex. 3 at 1.) He recommended x-rays of the hips and lumbar spine; these proved negative. (Ex. 5 at 30, 32.) He diagnosed low back pain, degenerative disc disease, and lumbar radiculopathy. (Ex. 3 at 1.)

On April 26, 2015, Mr. Oswald presented to the emergency department of Henry County Medical Center and reported having had a "back injury five years ago." He stated his recent pain began "on Friday" and that he had "been to Camden" before coming "here." (Ex. 6 at 3.) The provider diagnosed acute low back pain. *Id.* at 7. Mr. Oswald returned on May 5, 2015, and stated "he has had [a] Workers' Comp back injury w/ pain radiating down both legs." *Id.* at 22. He related he was scheduled to see a neurosurgeon and was again diagnosed with acute low back pain. *Id.* Repeat visits on June 16, 2015, and July 2, 2015, noted reports of pain since April 2015 and resulted in similar diagnoses. *Id.* at 54 and 83.

On July 28, 2015, Mr. Oswald saw FNP Steven Cannady, who diagnosed "BACKACHE UNSPECIFIED." (Ex. 4 at 2.) FNP Cannady detailed a history of "chronic back pain" and "trouble with his back since he was 29 years of age." *Id.* Mr. Oswald reported "3 or 4 surgeries" and ongoing pain since April. *Id.* He requested referral to a neurosurgeon, and FNP Cannady made the referral. Follow-up visits in August and October 2015 noted similar diagnoses. FNP Cannady ordered an MRI at

Camden General during the August visit. (Ex. 4 at 8.)

The MRI was performed on October 8, 2015, and was interpreted by the radiologist as showing degenerative and surgical changes and "a new finding" at L3/4, a disc protrusion compressing the L4 nerve root. (Ex. 5 at 38.) The reference to a new finding was made in comparison to an earlier MRI dated July 29, 2010. *Id.* at 37.

Mr. Oswald saw Dr. Jacob Schwarz, a neurosurgeon, upon referral by FNP Cannady. On October 1, 2015, Dr. Schwarz noted a history of three prior back surgeries. Mr. Oswald further reported he had worked "full-time without pain until April 2015 when he injured his back lifting a machine drive line." (Ex. 2 at 5.) Dr. Schwarz confirmed the upcoming MRI and advised he would follow up with Mr. Oswald thereafter. He did so on October 22, 2015, and noted the MRI showed a "large disc herniation at L3-4 causing severe right-sided stenosis that is new compared to his previous imaging studies." *Id.* at 11. Dr. Schwarz stated that, "given his history of complete pain relief prior to the April 20, 2015 event and the evidence of a new disc herniation on the MRI scan, I believe it is more likely than not that his pain is related to the disc herniation and at [sic] disc herniation was caused by the workplace event." *Id.* Dr. Schwarz confirmed the latter statement by answering in the affirmative the following question from Mr. Oswald's current counsel:

> Considering all the information available to you within a reasonable degree of medical certainty based upon your examination and treatment of Jason Oswald if the symptoms he is experiencing in his back, right hip and right leg are primarily (more than 50%) attributable to his work injury of April 20, 2015.

Dr. Schwarz placed an asterisk beside his affirmative answer and then wrote beside another asterisk below the that answer the following: "He states he was pain free for 2 years before this event 4-20-15 and he now has a new L3-4 disc herniation."

After seeing Dr. Schwarz, Mr. Oswald returned to Camden General on October 28, 2015, and reported "chronic lumbar pain." (Ex. 5 at 43.) The record indicates the "location where incident occurred was at home." *Id.*

Mr. Oswald claimed he called Mr. Fowlkes on different occasions while seeking treatment to request that LMI provide him with medical care to no avail. Conversely, Mr. Fowlkes testified that Mr. Oswald made no further contact with LMI after the alleged injury and that LMI no longer considered him an employee. The parties do agree LMI received a letter from Mr. Oswald's former attorney in May 2015 advising of the alleged injury and requesting a panel of physicians. (Ex. 25.) Mr. Fowlkes contends this was LMI's first notice of an alleged work-related injury. LMI, through its carrier, denied the claim and never offered a panel of physicians.

4

Mr. Oswald testified he had undergone three prior back surgeries. First, following a work injury in 2006, he underwent repair of an L5-S1 disc herniation. In 2012, following another work injury, Mr. Oswald underwent a second surgery at L4-5 for a disc herniation and required a second procedure to correct surgical damage to the lining of the spinal cord. He received settlements for both claims. Regarding his condition prior to April 20, 2015, Mr. Oswald testified he was "pain-free for a long time," more specifically, from early 2013 to 2015. He described his back during that period as "fine" and stated he had "more mobility" than he now has after the alleged injury. He had "stiffness" in his back when beginning work at LMI but "nothing like it is now." He did not have to ask for help and performed all of his required duties.

In support of its argument, LMI offered extensive proof of Mr. Oswald's prior back problems. Namely, in confronting Mr. Oswald on cross-examination with his past medical records, LMI established Mr. Oswald had seen numerous physicians between 2008 and 2012 for complaints of low back and leg pain related to herniated lumbar discs. (*See generally* Exs. 8-19.)

Against this backdrop of significant prior medical treatment, Mr. Fowlkes admitted LMI did not require Mr. Oswald to disclose previous back problems in his application. Likewise, Mr. Fowlkes confirmed LMI did not ask Mr. Oswald about any prior back problems prior to his beginning employment in August 2013.

LMI also offered evidence regarding Mr. Oswald's medical treatment in early 2015, prior the April 20, 2015 injury date. Namely, on January 3, 2015, Mr. Oswald presented to Camden General and reported back pain with an "onset [of] 5 days ago." (Ex. 20 at 111.) The pain was described as severe and radiating to both legs. *Id.* He was diagnosed with low back pain and given several medications. *Id.* at 112. He returned on January 11, 2015, and reported an onset of pain "12 days ago" and that the pain began at home after lifting. (Ex. 21 at 132.) Mr. Oswald described the pain as severe. *Id.* The provider diagnosed a lumbar strain and advised him to see Dr. Ken Berry within two to four days. He again received medications.

Mr. Oswald saw Dr. Ken Berry on January 16, 2015, and reported "a flare up" of low back pain. He had been hurting for one month and requested "something for pain." (Ex. 22 at 386.) Dr. Berry prescribed "#60 Tablets" of Norco, described as hydrocodone. *Id.* at 387. Twelve days later, on January 28, Mr. Oswald reported having "taken almost all" of the medication and some steroids. "Nothing" was helping and he could not sleep because his pain was "so severe." (Ex. 23 at 388.)

The Court noted Mr. Oswald sat favoring his right hip and grimaced and groaned frequently as if in pain. He testified that sitting was his most uncomfortable position. The Court advised Mr. Oswald that he might stand if needed; he did not and remained seated

in the witness chair for approximately one hour without interruption and for the majority of the remaining one hour and ten minutes of the hearing when he was not testifying. As of the hearing, Mr. Oswald remained unemployed because of his back injury. He testified he was on "disability."

LMI placed four affidavits into evidence. Mr. Eric Bruce Six testified that he has been an employee of LMI since 2015. He recalled an event "prior to April 20, 2015" when Mr. Oswald "bent over one day while complaining of back pain." Mr. Oswald showed Mr. Six a scar on his back and related he had undergone several back surgeries in the past. He also told Mr. Six he "had run out of medication that day." Mr. Six remembered Mr. Oswald missing "a lot of days." (Ex. 25.)

Mr. Edward Carson Nix, another LMI employee, testified by affidavit that Mr. Oswald would "often complain" about back pain and would "routinely miss work." He related Mr. Oswald told him about a previous injury requiring surgery and that Mr. Oswald told him that he "never told Tim Fowlkes about this prior injury." He saw Mr. Oswald wearing a brace on occasion and heard him "often complain" about back pain. Mr. Oswald would frequently miss work. (Ex. 26.)

Mr. Rusty Puckett, another LMI employee, testified identically to Mr. Nix as to Mr. Oswald relating a prior injury requiring surgery, complaining of back pain "often," routinely missing work and wearing a back brace. (Ex. 27.)

Mr. Bobby Tanner, who is not affiliated with LMI, testified he was with Mr. Kevin Smith on April 20, 2015, and that Mr. Oswald was at Smith Logging "nearly half the day." Mr. Smith installed the "driveshaft" and Mr. Tanner never saw Mr. Oswald "touch the driveshaft." Mr. Oswald worked on the machine for another two hours after the "driveshaft" installation, including climbing on the machine to "fix the lights." He never heard Mr. Oswald complain of pain, "indicate that he had suffered an injury" or "slip and fall, or otherwise injure himself that day."

Based upon this proof, Mr. Oswald asserted he came forward with sufficient evidence to entitle him to medical evaluation and/or treatment of his back injury. LMI maintained its denial based on Mr. Oswald's failure to prove his injury primarily arose out of his employment.

Specifically, LMI contended the evidence calls into question the occurrence of an injury. Moreover, the only medical opinion regarding causation is that of Dr. Schwarz, who based his opinion upon the premise that Mr. Oswald was pain-free for two years prior to the alleged injury; because this is untrue, Dr. Schwarz' opinion fails to support Mr. Oswald's contention that his injury arose primarily out of the employment.

6

## Findings of Fact and Conclusions of Law

An employee need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, an employee such as Mr. Oswald must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.* Mr. Oswald must show that he suffered an accidental injury caused by an incident, or specific set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(13)(A) (2015). In examining these requirements, the Court will not remedially or liberally construe the law in favor of either party, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Oswald nor LMI. *See* Tenn. Code Ann. § 50-6-116 (2015).

As to the first required element of a compensable injury, that of a specific incident, the Court finds the lay testimony preponderates in favor of LMI. Mr. Smith, an independent witness affiliated with LMI only as a customer, believably testified Mr. Oswald did not state to him that he had suffered an injury. The Court can find no basis to discredit Mr. Smith's testimony that Mr. Oswald did not mention any injury to him. Further, Mr. Oswald did not complain of pain as he continued to work for an extended time after the alleged injury. This is consistent with the statement of Bobby Tanner, another independent witness, who in his affidavit stated Mr. Oswald worked for two hours on the knuckle-boom, including climbing upon it to "fix the lights" just as Mr. Smith observed. This combined testimony, directly contrary to that of Mr. Oswald, is more believable. The Court finds it inconsistent that Mr. Oswald suffered a back injury as described, but then was able to continue working as observed by Mr. Smith and Mr. Tanner.

Likewise, Mr. Smith testified that Mr. Oswald, when leaving his premises, did not walk in an unusual manner. This is at variance with Mr. Oswald's description of a sideways lean to his gait due to pain. Mr. Fowlkes provided corroborating testimony that Mr. Oswald neither reported any injury on April 20, when returning to LMI, nor on the next day when telephoning to advise of back pain preventing him from coming to work.

Notice of an injury must state, as pertinent here, "in plain and simple language . . . the time, place, nature and cause of the accident resulting in injury[.]" Tenn. Code Ann § 201(a)(2) (2015). The Court finds LMI did not receive substantive notice of the alleged injury until Mr. Oswald's first counsel corresponded on May 5, 2015. (Ex. 24.) While Mr. Oswald satisfied the technical requirement of notice to LMI within thirty days by counsel's letter, the absence of proof regarding direct reporting is probative and the Court finds that LMI's evidence, specifically Mr. Fowlkes' testimony, is more compelling.

7

Beyond the questionable lay evidence, the Court also finds Mr. Oswald's medical proof fails to satisfy the requisite statutory criteria, and this failure is fatal at this juncture of the case.

Specifically, because Tennessee law requires Mr. Oswald to establish his injury arose primarily out of his employment, he must show to a reasonable degree of medical certainty that the injury of April 20, 2015, contributed more than fifty percent to his disablement or need for medical treatment when considering all causes. Tenn. Code Ann. § 50-6-102(13)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(13)(D) (2015).

In this case, the only "causation" opinion is that of Dr. Schwarz. Dr. Schwarz was not a panel physician; thus, no presumption of correctness attaches to his opinion. *See* Tenn. Code Ann. § 50-6-102(13)(E) (2014). Hence, the Court will not presume his opinion is correct but instead will evaluate the opinion in light of the evidence presented.

Dr. Schwarz opined, in response to a letter from counsel, that Mr. Oswald's symptoms were "more than 50%" attributable to the injury of April 20, 2015. Importantly, when answering this question in the affirmative, Dr. Schwarz placed an asterisk beside the mark indicating his answer. In the narrative below this answer, Dr. Schwarz wrote that Mr. Oswald had told him he was pain-free for two years before April 20, 2015. Further, Dr. Schwarz stated Mr. Oswald now has a "new L3-4 disc herniation." The Court views Dr. Schwarz' marking of his response by an asterisk as being an indication of a qualification of his opinion and that such qualification assumes not only the anatomic change, but also the absence of pain for two years previous. Accordingly, the Court agrees with LMI that the causation opinion of Dr. Schwarz is flawed because Mr. Oswald was not pain-free for two years prior to April 20, 2015.

A review of the evidence supports this finding. Initially, the Court finds the records of Camden General Hospital from January 3 and January 11, 2015, are telling. The note of January 3, 2015, records an onset of pain "5 days ago" and the note of January 11, 2015, indicates an onset "12 days ago." These are consistent with an onset of back pain in late December 2014. (Ex. 20 at 111; Ex. 21 at 132.) The note of January 11 indicates a lifting incident at "home" as being the triggering event. (Ex. 21 at 132.) He reported "sharp" and "stabbing" pain, which began as "moderate," but is now "severe." *Id.* Mr. Oswald stated he could not see a physician until January 14. *Id.* Mr. Fowlkes corroborated these facts by his recollection that Mr. Oswald missed several days in that timeframe.

Next, the Court notes Mr. Oswald saw Dr. Ken Berry on two occasions in January 2015, and reported "a flare up." Despite taking a large amount of medication, his pain

8

was severe. This is highly inconsistent with being pain-free and calls into question whether the "new" disc herniation is related to an event some weeks later on April 20, 2015.

The records from Camden General and Dr. Berry from January 2015, belie any history of Mr. Oswald being pain-free for two years. To the contrary, these records indicate that he complained of a flare of back pain to such a degree that he sought emergency room care on two occasions, made two visits to a primary care physician and reported severe pain recalcitrant to narcotics. Notably, Dr. Berry's record of January 28, 2015, indicates Mr. Oswald had taken "almost all" of the medication he prescribed, sixty tablets, in a twelve-day period. Regardless of the prodigious use of medication noted in this record, the collective notations in the January 2015 records regarding Mr. Oswald's complaints indicate a severe flare of a pre-existing back issue. This is entirely consistent with Mr. Fowlkes' recollection of Mr. Oswald's missed days in the relevant timeframe. Likewise, the reports of a "flare" are consistent with the other lay witness proof of both Mr. Oswald missing work and discussing prior back issues throughout his employment at LMI.

Finally, the Court notes Tennessee authority to the effect that an inaccurate history will not support a finding of causation. For example, in *Foreman v. Automatic Systems*, 272 S.W.3d 560 (Tenn. 2008), our Supreme Court "accredit[ted], as did the trial court" the testimony of the treating physician over that of two other physicians. Because the treating physician "had the benefit of observing [the employee] over a period of years," the court reasoned that he "was aware of her complete medical history, and based his opinion on his personal knowledge of her condition." *Id.* at 574-75. At least two Workers' Compensation Panels have reached similar results. In *Hamilton v. Danka*, No. 02S01-9806-CH-00051, 1999 Tenn. LEXIS 398 (Tenn. Workers' Comp. Panel July 30, 1999), the court determined an opinion based upon a faulty hypothetical as to the extent of repetitive use of the hands could not form the basis of a valid causation opinion. Similarly, in *UPS v. Cameron*, No. E2013-02001-SC-R3-WC, 2014 Tenn. LEXIS 609 (Tenn. Workers' Comp. Panel Aug. 15, 2014), the panel affirmed the trial court that had given greater weight to treating physicians as opposed to physicians who "relied on [an] inaccurate medical history provided by the employee." *Id.* at *16.

Here, the hypothetical posed to Dr. Schwarz included the applicable statutory standard of the injury being "more than 50%" attributable to Mr. Oswald's work, but was qualified by the notation of Mr. Oswald's assertion of being pain-free for two years prior to the alleged incident. Dr. Schwarz was not aware, by a careful reading of his records, of the treatment in January 2015. To the contrary, Dr. Schwarz based his opinion on the belief that Mr. Oswald was working without pain until April 20, 2015. Unlike the treating physician in *Foreman*, Dr. Schwarz was not aware of Mr. Oswald's complete medical history and had no personal knowledge of prior problems a mere weeks before the alleged event.

9

Given the totality of the evidence, the Court is unable to find that Mr. Oswald has come forward with sufficient evidence to show he would likely prevail at a hearing on the merits and, at this time, denies his request for benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Oswald's claim against LMI for the requested medical benefits is denied at this time.

2. This matter is set for an Initial (Status) Hearing on April 5, 2016, at 9:00 a.m. Central time.

**ENTERED this the 3rd day of February, 2016.**

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 901-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

11

# APPENDIX

Exhibits:
1. Affidavit of Jason Oswald;
2. Medical Records of Dr. Jacob Schwarz;
3. Medical Records of Dr. Alex Heffington;
4. Medical Records of FNP Steve Cannady;
5. Medical Records of Camden General Hospital;[2]
6. Medical Records of Henry Co. Medical Center;
7. Wage Statement;
8. Jackson Clinic MRI report dated September 5, 2008;
9. Crosby Clinic record of November 7, 2008;
10. Semmes-Murphey Clinic record of July 28, 2010;
11. Jackson-Madison Co. General Hospital MRI record of July 29, 2010;
12. Independent Medical Evaluation of Dr. Apurva Dalal of August 8, 2008;
13. Camden General Hospital records of November 7, 2010;
14. Camden General Hospital records of May 30, 2011;
15. Crosby Clinic record of January 23, 2012;
16. Crosby Clinic record of February 6, 2012;
17. Sports Orthopedics and Spine MRI report of January 31, 2012;
18. Crosby Clinic record of August 13, 2012;
19. Camden General Hospital records of December 30, 2012;
20. Camden General Hospital records of January 3, 2015;
21. Camden General Hospital records of January 11, 2015;
22. Dr. Ken Berry record of January 16, 2015;
23. Dr. Ken Berry record of January 28, 2015;
24. Letter from Attorney T. Verner Smith to LMI dated May 5, 2015;
25. Affidavit of Eric Bruce Six;
26. Affidavit of Edward Carson Nix, Jr.;
27. Affidavit of Paul "Rusty" Alan Puckett; and
28. Affidavit of Bobby Tanner.

Technical record:
1. Petition for Benefit Determination, filed on July 27, 2015;
2. Dispute Certification Notice, filed on September 23, 2015;
3. Request for Expedited Hearing, filed on November 18, 2015; and
4. LMI's Response to Expedited Hearing.[3]

---

[2] The Court removed from Exhibits 5 and 6 certain pages irrelevant to the Court's consideration of the case, namely, blank pages, pages recording administrative functions of the emergency department and nurse's notes not bearing on the relevant treatment or history. The Court made available to the parties the removed documents and asked that they review those documents to determine if any were relevant to their presentation of the case. The parties did not advise of such relevance.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 3rd day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| Charles L. Hicks, Employee's Counsel | | | X | Larry_hickslaw@bellsouth.net |
| Travis Ledgerwood, Employer's Counsel | | | X | tledgerwood@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.